IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01469-WYD-MEH

DALLAS BUYERS CLUB, LLC,

    Plaintiff,

v.

LEONARD CORDOVA,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff has filed a Motion for Entry of Default Judgment against Defendant Leonard Cordova (filed December 29, 2014; doc. #53). Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.3, the motion was referred to me for a Report and Recommendation January 5, 2015. (Doc. # 56.) The matter is briefed to the extent required by court rules and the prevailing law, and the Court finds that oral argument is not necessary for the adjudication of the motion. Based upon the record and for the reasons that follow, the Court recommends that the District Court **grant in part and deny in part** the motion.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the

**BACKGROUND**

In this case, Plaintiff's allegations involve a complicated technical process used to download a copyrighted work (here, the motion picture "Dallas Buyers Club") through the BitTorrent program; therefore, this Court finds it necessary first to explain how BitTorrent works, then to note its findings of fact in this case.

**I.     BitTorrent Protocol**

Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program. This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates. *Id.* at *1-*3. First, the vocabulary used in the technology:

> *Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.
>
> *IP Address:* The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File:* A collection of related data packets treated as a unit.
>
> *Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.

---

aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.
>
> *BitTorrent:* A peer-to-peer file sharing protocol.
>
> *Peer:* A BitTorrent user.
>
> *Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).
>
> *Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.
>
> *Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.
>
> *Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.
>
> *Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).
>
> *Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.
>
> *Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted). Judge Ludington proceeds to describe the protocol and how BitTorrent works:

> BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."
>
> . . .

3

> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."
>
> Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:
>
> 1. Install BitTorrent (or have done so already).
> 2. Surf the web.
> 3. Click on a link to a *.torrent* file.
> 4. Select where to save the file locally, or select a partial download to resume.
> 5. Wait for download to complete.
> 6. Tell downloader to exit (it keeps uploading until this happens).
>
> BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."
>
> "In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."
>
> In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:
>
> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *2-*3 (citations omitted).

## II.     **Findings of Fact**

1.	Plaintiff is a limited liability corporation organized under the laws of Texas and located at 2170 Buckthorne Place, Suite 400, The Woodlands, Texas 77380. (Doc. # 43 at ¶6.)

2.	Plaintiff is the owner of United States Copyright Registration Number PA 1-873-195 for the motion picture entitled "Dallas Buyers Club" ("Motion Picture"). The work was registered on or about November 13, 2013. (Doc. # 1-2.)

3.	Plaintiff's investigator, Crystal Bay Corporation ("CBC"), detected IP address 24.9.35.195 being used to gain access to the internet and distribute and make available for distribution and copying Plaintiff's Motion Picture. Initially, that IP address was ascribed to John Doe 2. (Doc. ## 7-1; 1-1.)

4.	Using its forensic software, Crystal Bay Corporation detected transactions occurring on peer-to-peer networks through which computers used Doe 2's IP address to transmit a copy or part of a copy of a digital media file identified by the hash value 1FFB9F8A4A69B9F 9F7B59896652AE 1825221A783 ("Hash 1FF"). (Doc. ## 7-1 at 5; 1-1.) CBC confirmed that Hash 1FF corresponds to Plaintiff's Motion Picture. (Doc. # 7-1 at 5-6.)

5.	CBC downloaded from Doe 2's IP address files containing a substantial portion of Plaintiff's Motion Picture. (Doc. # 7-1 at 6.) CBC confirmed that reassembling pieces downloaded from the IP address produces the Motion Picture in fully playable form. (Doc. #43 at 8.) The download from Doe 2's IP address occurred on April 21, 2014. (Doc. ## 1-1; 43-1.)

6.	Through the applicable internet service provider, Plaintiff has identified Leonard Cordova with the Doe 2 address. (Doc. ## 43 at pp. 2-3.)

7.	Defendant Cordova is an individual residing at 32 Murray Heights Drive, Colorado Springs, Colorado. (Doc. # 49.)

8.      These facts facially support an allegation that, without permission or authorization, Defendant Cordova downloaded and uploaded Plaintiff's copyrighted Motion Picture. (Doc. # 43 at p. 8.)

9.      As the subscriber in control of the IP addresses being used to distribute Plaintiff's copyrighted Motion Picture, Defendant Cordova is the most likely infringer. Defendant Cordova has failed to appear, plead, or otherwise defend in this action. Therefore, Defendant Cordova is the only person who can be identified as the infringer.

10.     On October 23, 2014, Plaintiff filed the operative Amended Complaint in this case naming Leonard Cordova as Defendant. (Doc. # 43.)

11.     Defendant Cordova was served with a summons and the Amended Complaint on November 4, 2014 (Doc. # 49.)

12.     On December 1, 2014, Plaintiff filed a Motion for Entry of Clerk's Default as to Defendant Cordova pursuant to Fed. R. Civ. P. 55(a). (Doc. # 50.)

13.     On December 4, 2014, the Clerk of the Court entered default for Defendant Cordova. (Doc. # 51.)

14.     Plaintiff seeks statutory damages for willful direct infringement and contributory infringement. (Doc. # 43.)

## PROCEDURAL HISTORY

Plaintiff initiated this action against 20 Doe Defendants on May 26, 2014. (Doc. # 1.) Since that time, Plaintiff dismissed 19 Doe Defendants, leaving only Doe Defendant 2. On October 23, 2014, Plaintiff filed an Amended Complaint identifying Doe Defendant 2 as Leonard Cordova, who Plaintiff named as the sole Defendant in this case. Plaintiff served a summons and the Amended

Complaint upon Defendant Cordova on November 4, 2014; thus, Defendant's answer or other response was due to be filed on or before November 28, 2014. (Doc. # 49.) However, Defendant filed no answer or other response before the deadline; therefore, on December 1, 2014, Plaintiff filed a Motion for Entry of Clerk's Default Against Defendant. (Doc. # 50.) The Clerk of the Court entered default against Defendant on December 4, 2014. (Doc. # 51.) Plaintiff then filed the present motion for default judgment on December 29, 2014, with an attached certificate demonstrating service of the motion upon Defendant. (Doc. ## 53, 53-1.) Nevertheless, Defendant neither responded to the motion nor sought any extension of time within which to respond.

The Court is now fully advised and recommends as follows.

## LEGAL STANDARDS

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides the authority for the District Court to enter default judgment. After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits.")); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

"Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *See McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true.

7

*Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1956) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded."). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("[U]pon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof." (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))).

## ANALYSIS

Upon review of the record, the Court recommends finding that default judgment be entered in Plaintiff's favor against Defendant Cordova pursuant to Fed. R. Civ. P. 55(b)(2) as follows.

**I. Jurisdiction and Liability**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default

judgment); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment). Here, the record reveals that Defendant Leonard Cordova resides at 32 Murray Heights Drive, Colorado Springs, Colorado. (Doc. # 49.) As Defendant resides in the District of Colorado, the Court has personal jurisdiction over him. In addition, this is a copyright infringement case, and the federal courts have original jurisdiction in such cases. *See* 28 U.S.C. § 1338. The Copyright Act creates a cause of action in favor of the owner of a copyright for direct infringement. 17 U.S.C. § 501.

Furthermore, taking its allegations as true, the Plaintiff has established violations of its copyrights by Defendant Cordova, in that a computer using an IP address assigned to him participated in an illegal download of Plaintiff's copyrighted Motion Picture. A plaintiff is entitled to a determination of liability unless it has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof. *Weft, Inc.*, 630 F. Supp. at 1143.

Here, Plaintiff's Amended Complaint includes the following summarized allegations. Defendant installed a BitTorrent Client program onto his computer and visited a torrent site to upload and download Plaintiff's copyrighted Motion Picture. (Doc. # 43 at ¶¶ 15, 27.) Defendant participated in a "swarm," directly interacting and communicating with other peers. (*Id.* at ¶ 32.) Defendant copied a piece of Plaintiff's copyrighted Motion Picture identified by its Unique Hash Number. (*Id.* at ¶ 38(A).) Defendant's computer or computers, located in this District, used its or their identified IP addresses to connect to CBC's investigative server and to transmit a full or partial copy of the digital media file identified by the Motion Picture's unique hash number. (*Id.* at ¶ 39.)

CBC's agent verified that the digital media file was identical, strikingly similar, or substantially similar to Plaintiff's copyrighted Motion Picture. (*Id.* at ¶ 41.) Using the BitTorrent protocol, BitTorrent Client, and the process described above, Defendant copied the constituent elements of Plaintiff's Motion Picture that are original. (*Id.* at ¶ 46.)

Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2). (Doc. # 43 at ¶ 49.) Plaintiff has suffered actual damages that were proximately caused by Defendant, including lost sale prices, price erosion, and diminution of the value of its copyright. (*Id.* at ¶¶ 50-51.) By participating in the BitTorrent swarm with other peers, Defendant induced, caused or materially contributed to the infringing conduct of each other peer. (*Id.* at ¶ 55.) Defendant knew or should have known that other BitTorrent users in the swarm were directly infringing Plaintiff's copyrighted Motion Picture. (*Id.* at ¶ 57.) Plaintiff suffered actual damages that were proximately caused by each copyright infringement. (*Id.* at ¶ 62.)

"There are two elements to a copyright infringement claim: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). "The plaintiff bears the burden of proof on both elements." *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005)).

Here, the Plaintiff alleges it owns the copyright to the Dallas Buyers Club Motion Picture described above, and provides the registration number, publication date and registration date for the Motion Picture. (*See* Doc. #43 at p. 3.) The Court takes Plaintiff's well-pleaded allegations as true.

For the second element, Plaintiff must prove that Defendant "'unlawfully appropriated

10

protected portions of the copyrighted work.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that [Defendant], as a factual matter, copied portions of [Plaintiff's] work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir. 2002) (quoting *Country Kids 'N City Slicks, Inc. V. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996)).

"[A] plaintiff can indirectly prove copying (in a factual sense) 'by establishing that Defendant[] had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284) (alteration added). "A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings Inc. V. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007)).

"Once copying has been established, 'liability for copyright infringement will attach only where protected elements of a copyrighted work are copied.'" *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284). "The plaintiff must prove that there is a 'substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants'

11

[work].'" *Id.* (quoting *Country Kids 'N City Slickers, Inc.*, 77 F.3d at 1284). "Substantial similarity is measured by whether an 'ordinary observer,' who is not specifically looking for disparities, would tend to overlook any differences between the works." *Id.* (citation omitted).

In this case, Plaintiff has sufficiently alleged that Defendant copied its protected Motion Picture. Plaintiff has demonstrated, through verified testimony, that its investigator downloaded the Motion Picture, or portions of it, from each Doe Defendant's IP address. (Doc. # 7-1 at 5-6.) The investigator identified the Motion Picture by its unique "hash value," and by visually comparing the downloaded files with a DVD copy of the Motion Picture provided by Plaintiff. (*Id.*) Having viewed the files and DVD, the investigator confirmed that the files contain a substantial portion of the Motion Picture. (*Id.*) Defendant Cordova was subsequently identified as the person to whom the IP address assigned to Doe Defendant 2 belonged. (Doc. # 43 at pp. 2-3.) Taking these well-pled allegations as true, the Court finds that Plaintiff has established that Defendant Cordova copied Plaintiff's copyright protected Motion Picture and recommends that the District Court find that Defendant Cordova has committed two (2) direct infringements of the Copyright Act against the Plaintiff.

However, the Court is not convinced that these factual allegations support a claim for contributory infringement. Contributory infringement requires proof of direct infringement by someone other than the defendant. *See La Resolana Architects, PA*, 555 F.3d at 1181 (citation omitted). Plaintiff alleges that Defendant participated in a BitTorrent "swarm" with other peers to cause the infringement of its copyrighted Motion Picture by other swarm members. However, Plaintiff has not established direct infringement by any other party, and so the claim for indirect contributory infringement by Defendant necessarily fails. *See id.* Accordingly, the Court

recommends that the District Court find the Plaintiff has failed to demonstrate the Defendant's liability as to contributory infringement.

**II.     Damages**

Here, Plaintiff seeks statutory damages and costs for the alleged copyright infringement in April of 2014, as described above. Under federal copyright law, "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Damages may be increased to up to $150,000 if the infringement is willful. 17 U.S.C. § 504(c)(2). Plaintiff seeks $31,000.00 from Defendant Cordova on the basis of its allegations of willful infringement. Plaintiff also seeks attorney's fees in the amount of $2,200.00 and costs in the amount of $1,576.40.[2] Attorney's fees and costs are also authorized under the statute. *Id.* § 505. Although Plaintiff prayed for injunctive relief in its Amended Complaint, it elected not to pursue injunctive relief in its Motion for Default Judgment. (Doc. # 54, n.1).

This case is one of dozens alleging copyright infringement via the BitTorrent protocol that are filed in this District and handled by me as Magistrate Judge. Many of the defendants named in these lawsuits settle very early in the case. Some of those who do not settle have denied any participation in copyright infringement. Other defendants allege that their wireless connection may have been used by someone else to participate in the alleged swarm against the plaintiff's protected works. However, in this case, there is no evidence that anyone other than Defendant Cordova

---

[2] Although Plaintiff asserts that it seeks $1,176.40 in costs, the Court has added the itemized costs and reached a total sum of $1,576.40, suggesting that Plaintiff's total sum mistakenly left out the $400.00 filing fee. Thus, the Court finds that Plaintiff intended to seek $1,576.40 in costs.

committed the infringements. Despite being informed both before and during this litigation of the allegations against him, Defendant has failed to answer or otherwise defend himself in this case. For these reasons, I believe that Plaintiff has established entitlement to willful infringement damages. Furthermore, courts across the country have awarded anywhere from $750.00 to $150,000.00 per infringement in cases of this type, which mirrors the range provided in the statute. Thus, I find that a statutory damage award of $2,250.00 per infringement is appropriate and just in this case to accomplish the intent set forth by Congress in passing the Copyright Act. In addition, Plaintiff's request for $2,220.00 in attorney's fees based upon 7.4 hours of work at $300.00 an hour is reasonable.

However, the Court finds that Plaintiff's request for $1,176.40 in costs is unreasonable, as it is approximately twice as much as this Court typically awards in similar cases. Plaintiff incurred the cost of $945.00 for a "production response payment" to Comcast on August 12, 2014. (Doc. # 54-1 at p. 2). Seven Doe Defendants remained parties at that point in the litigation, and Plaintiff has not demonstrated that the $945.00 payment was incurred solely for its claims against Leonard Cordova. *See English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001) (denying requested costs because prevailing party failed to explain how the listed expenditures met the requirements of 28 U.S.C. § 1920 or identify the purpose of each expenditure). Absent any indication that the $945.00 payment was for Leonard Cordova only, the Court finds it is proper to divide that amount by the seven Doe Defendants who remained parties on August 12, 2014, when the cost was incurred, which is $135.00 per Defendant. The Court finds the remaining requested costs – $631.40 – reasonable. Therefore, the Court finds that Plaintiff is entitled to a total of $766.40 in costs.

## CONCLUSION

Based on the foregoing, and the entire record provided to the Court, I respectfully RECOMMEND that the District Court **GRANT IN PART AND DENY IN PART** the Plaintiff's Motion for Default Judgment against Defendant Leonard Cordova (filed December 15, 2014; doc. # 45) as follows:

1. Enter judgment in Plaintiff's favor against Defendant Cordova for direct copyright infringement of the Plaintiff's copyrighted Motion Picture, as set forth in Count I of the Amended Complaint; and

2. Order Defendant Cordova to pay to Plaintiff the sum of $2,250.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $2,986.40 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

Respectfully submitted at Denver, Colorado, this 2nd day of February, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge